S07A1357. BROWN v. THE STATE.
(658 SE2d 740)

HINES, Justice.

Richard Nelson Brown appeals his convictions for malice murder, aggravated assault, two counts of burglary, and possession of a firearm during the commission of a crime, all in connection with the death of Kenneth H. Crook. For the reasons that follow, we affirm.[1]

---

[1] The crimes occurred on September 30, 2005. In the March 2006 term of court, a Coweta County grand jury indicted Brown for malice murder, aggravated assault, two counts of burglary, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. Brown was tried before a jury November 27-29, 2006, and found guilty of malice murder, aggravated assault, two counts of burglary, and possession of a firearm during the commission of a crime; an order of nolle prosequi was entered on the charge of possession of a firearm by a convicted felon. On November 29, 2006, the trial court sentenced Brown to a term of life in prison for malice murder, a consecutive term of twenty years in prison for aggravated assault, terms of twenty years in prison for each of the burglary counts, to be served concurrently with each other and with the twenty-year term for aggravated assault, and a term of five years in prison for possession of a firearm during the commission of a crime, to be served

Construed to support the verdicts, the evidence showed that Crook operated a family-owned tire store located four miles from his home; a grocery store, a convenience store, and a loan office owned by his family were near the tire store. Brown was a former employee of the tire store.

A friend went to Crook's home at 8:55 p.m.; Crook's vehicle was parked there, but he did not respond to repeated attempts to get him to answer the door. The friend left, returned at 10:30 p.m., and found the back door to Crook's home open; it had not been open on her earlier visit. She entered and discovered Crook's body in the bedroom. He had been struck twice in the head with a pistol, strangled with a thin ligature, and suffered two gunshots to the front of the head; one of the bullet wounds was the fatal wound. Blood impact stains and smears were on the wall, and next to the body was the bloody imprint of a shoe with a distinctive tread design. There were bindings around Crook's wrists and arms, and pornographic pictures of women were scattered near the body; two spent cartridges from a .380 caliber pistol were also near. Crook's wallet and keys were missing.

Both Crook's residence and the tire store had security systems. A security alarm was set off at 4:35 p.m. on the rear door of Crook's residence; the monitoring company successfully reached Crook at the tire store and cancelled the alarm. At 7:00 p.m., the alarm on the rear door of Crook's residence was again activated, and a proper code was entered to turn off the alarm, but the monitoring company nevertheless telephoned the house; a male answered who did not give the proper password.[2] At 8:21 p.m., an alarm was activated at the tire store, and police were notified. The front door to the store was unlocked, and there was no sign of forced entry. A distinctive van identified as Brown's was seen at Crook's residence at 7:00 p.m. A surveillance camera at the convenience store owned by Crook's family, adjacent to the tire store, showed the van going through the parking lot of the convenience store at 8:37 p.m.

Brown told police that he had followed Crook home, and admitted shooting Crook twice in the head. He said that: Crook tried to hug and kiss him; things got "ugly"; the two men struggled; Brown took a pistol from a nearby dresser; he shot Crook once; Crook got back up; he shot him again; he used Crook's key to enter the tire store. Brown

consecutively to the term for aggravated assault. On December 7, 2006, Brown filed a motion for a new trial, which was denied on March 15, 2007. On April 26, 2007, Brown filed a motion for an out-of-time appeal, which was granted on May 1, 2007. Brown filed a notice of appeal on May 11, 2007, and his appeal was docketed in the Court of Appeals of Georgia on May 15, 2007; that Court transferred the appeal to this Court on May 21, 2007; the appeal was docketed in this Court on May 23, 2007, and submitted for decision on July 16, 2007.

[2] The telephone call was recorded, and the voice of the answering male was identified as Crook's.

told police where Crook's wallet could be found, and his shoe matched the imprint found at the crime scene.

1. The evidence was sufficient to enable a rational trier of fact to find Brown guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The verdict form, as returned by the jury, showed:

COUNT ONE - MALICE MURDER:
We the jury find the Defendant: NOT GUILTY ___ GUILTY _X_
We the jury find the Defendant: GUILTY OF FELONY MURDER ___
We the jury find the Defendant: GUILTY OF VOLUNTARY MANSLAUGHTER ___

COUNT TWO - AGGRAVATED ASSAULT:
We the jury find the Defendant: NOT GUILTY ___ GUILTY _X_

COUNT THREE - BURGLARY:
We the jury find the Defendant: NOT GUILTY ___ GUILTY _X_

COUNT FOUR - BURGLARY:
We the jury find the Defendant: NOT GUILTY ___ GUILTY _X_

COUNT FIVE - POSSESSION OF A GUN OR KNIFE DURING THE COMMISSION OF A CRIME:
We the jury find the Defendant: NOT GUILTY ___ GUILTY _X_

Brown contends that this verdict form was misleading. At trial, Brown specifically objected to the lack of blanks designating "not guilty" of felony murder and voluntary manslaughter, and the trial court noted that Brown was not indicted on such charges, those offenses were only being considered as lesser included crimes, and there was thus no need for the jury to specifically denote him "not guilty" of those charges.

What is at issue is whether "the form would mislead jurors of reasonable understanding, or the trial court erroneously instructed the jury on the presumption of innocence, the State's burden of proof, the possible verdicts that could be returned, or how the verdict should be entered on the printed form." *Rucker v. State*, 270 Ga. 431, 435 (5) (510 SE2d 816) (1999).[3] The trial court properly instructed the jury on

---

[3] Although the jury found Brown guilty of malice murder, this does not render moot the question of whether the verdict form improperly affected the jury's verdicts themselves. See

the presumption of innocence and the State's burden of proof. The court also properly instructed the jury on the law of justification based upon self-defense, and the law on felony murder and voluntary manslaughter.

Regarding the verdict form, the court said:

> In your verdict form, Count I will contain findings relating to malice murder, felony murder and voluntary manslaughter. If you do not believe beyond a reasonable doubt that the defendant is guilty of malice murder, then you would be authorized to find him guilty of felony murder or voluntary manslaughter. If you do find him guilty beyond a reasonable doubt of either of those offenses, you should specify the offenses in which you find him guilty. The form of your verdict would be we, the jury, find the defendant guilty of, and you would name the offense.
>
> In the event you do find the defendant guilty of causing the death of the alleged victim, you would be authorized to find him guilty of only one of the homicide forms defined for you and set out in Count I.
>
> If you find that the State has failed to prove the defendant's guilt beyond a reasonable doubt as to all charges, then it would be your duty to acquit the defendant, and the form of your verdict would be we, the jury, find the defendant not guilty, and you would specify in your verdict each Count upon which you have found the defendant not guilty.
>
> If you find the defendant guilty of some Counts and not guilty of some Counts, you should specify each Count upon which you find him guilty and each Count upon which you find him not guilty.

"Jury instructions are read and considered as a whole in determining whether there is error. [Cit.]" *White v. State*, 281 Ga. 276, 280 (4) (637 SE2d 645) (2006). Brown contends that it was not clear to the jury that marking "not guilty" next to "malice murder" would also apply as findings of "not guilty" to the crimes of "felony murder" and "voluntary manslaughter." However, the trial court's instruction was clear that a verdict of "guilty" or "not guilty" was to be entered on each Count, and that felony murder and voluntary manslaughter, as "homicide forms," were to be considered in relation to Count I, and that, if guilt was found, only one crime under Count I should be

---

*Rucker*, supra (addressing the verdict form after a finding of guilt on malice murder). Compare *Roberts v. State*, 276 Ga. 258, 260-261 (5) (577 SE2d 580) (2003) (challenge to jury charges on felony murder declared moot when jury found defendant guilty of malice murder).

indicated. Compare *Laster v. State*, 276 Ga. 645, 649-650 (5) (581 SE2d 522) (2003). The jury had ample guidance for its consideration of felony murder and voluntary manslaughter.[4]

Moreover, the jury's actions during deliberations do not support the conclusion that the verdict form actually caused confusion. The jury sent a request to the court for a "time line" and transcripts of the testimony of three witnesses, which included a specific question as to whether the testimony of one of the witnesses included a certain fact.[5] No questions were asked regarding the verdict form.

The verdict form used was not one that would mislead jurors of reasonable understanding, *Rucker*, supra, and there is no error.

*Judgments affirmed. All the Justices concur, except Sears, C. J., and Carley, J., who concur specially, and Hunstein, P. J., who dissents.*


SEARS, Chief Justice, concurring specially.

Brown contends that the trial court's verdict form and instructions confused the jury regarding the potential verdicts on felony murder and voluntary manslaughter. The verdict form and instructions, however, were proper and clear on the jury's consideration of malice murder, and the jury returned a guilty verdict on that crime. In previous cases, we have concluded that challenges to the indictment and jury instructions on felony murder and other crimes are rendered moot when a jury finds the defendant guilty of malice murder.[6] I find those cases persuasive authority in the present case, as I fail to see how, even assuming the verdict form was confusing as to felony murder and voluntary manslaughter, it could have confused the jury on its deliberations and verdict concerning malice murder. Accordingly, I specially concur in the judgment of the majority opinion.

I am authorized to state that Justice Carley joins in this special concurrence.

---

[4] Although not separately enumerated as error, Brown also asserts that the court's instructions did not properly advise the jury regarding consideration of the defense of justification, but the court fully charged the jury on the law of justification based upon self-defense, and on the State's burden of proof.

[5] The court responded to these questions by allowing the jury to review exhibits that had been prepared by the State, informing the jury that no transcripts were available, and stating that the jury would have to recall the testimony concerning its specific question.

[6] *Parker v. State*, 282 Ga. 897, 899 (655 SE2d 582) (2008) (charge on felony murder); *Roberts v. State*, 276 Ga. 258, 260-261 (577 SE2d 580) (2003) (indictment and charges on felony murder).

HUNSTEIN, Presiding Justice, dissenting.

The trial court, deliberately and over objection by the defense, used a verdict form that did not provide the jury with the option of a "not guilty" verdict on the offenses of felony murder and voluntary manslaughter. The verdict form was coupled with a jury charge that failed to inform the jurors that the "not guilty" option for malice murder on the form could operate as a general acquittal of the felony murder and voluntary manslaughter offenses and mentioned those two offenses expressly only in the context of a verdict of guilt. Because the form failed to show "a clear option of a not guilty verdict," with the result that a reasonable juror could easily "have been misled into believing that option was not available," *Chapman v. State*, 258 Ga. 214, 217 (4) (367 SE2d 541) (1988), and the trial court's instructions on the use of the verdict form did not correct the problem, see id., I must dissent to the majority's conclusion that the jury here had "ample guidance" from the trial court and there was "no error" in the verdict form used.

I cannot reconcile the majority's approval of the verdict form at issue here, with its total omission of the "not guilty" option for the felony murder and voluntary manslaughter offenses, with this Court's prior precedent regarding verdict forms. In *Smith v. State*, 249 Ga. 228 (5) (290 SE2d 43) (1982), we addressed the use of pre-printed verdict forms and expressed concern that the jury might "draw an inference, however unfounded, of predisposition on the part of the trial judge" because of the "antecedence of the word 'guilty' over the words 'not guilty' " in the form. Id. at 232. In *Chapman v. State*, supra, 258 Ga. at 217 (4), it was the "clear option of a not guilty verdict" and the "instructions on the use of the verdict form" that persuaded us that "no reasonable juror could have been misled" by the positioning of the verdict options on the form. See also *Huynh v. State*, 239 Ga. App. 62 (5) (518 SE2d 920) (1999). It was not until *Rucker v. State*, 270 Ga. 431 (5) (510 SE2d 816) (1999) that this Court concluded that, "[i]n and of itself, merely listing the possible guilty verdict option(s) before the 'Not Guilty' option does not render the verdict form misleading so as to constitute reversible error. [Cit.]" Id. at 435 (5).

From our holding in *Rucker*, supra, that there is no automatic suggestiveness in verdict forms positioning a "guilty" option before a "not guilty" option, the majority now approves without reservation the use of a verdict form that eliminates the "not guilty" option altogether. The verdict form here does not even contain a blank space in front of the "guilty" option so that the jury could write a "not" in the space. Compare *Chance v. State*, 154 Ga. App. 543 (2) (268 SE2d 737) (1980). Given that the mere antecedence of the word "guilty" over the words "not guilty" was sufficient to raise this Court's concern that this arrangement of verdict options might be perceived by a juror "to be an

expressive view of the court," *Smith v. State*, supra, what "perception" must a reasonable juror draw from the *complete omission* of the "not guilty" option on a verdict form?

Brown's jury was provided with neither a felony murder "not guilty" verdict option nor a voluntary manslaughter "not guilty" verdict option. It was not even provided with a *general* "not guilty" verdict option. Rather, the only "not guilty" option available for any of the homicide offenses was appended to the malice murder offense. Use of the form was reversible error because the form provided no "clear option of a not guilty verdict" for the felony murder and voluntary manslaughter offenses and thus could have confused or misled a reasonable juror into believing that option was not available. *Chapman v. State*, supra. Accord *Illinois v. Biggerstaff*, 679 NE2d 118 (Ill. App. Ct. 5th Dist. 1999) (failure to provide acquittal option on verdict form constituted reversible error).

Contrary to the majority's claim, the trial court's instructions on the use of the verdict form did not cure but instead compounded the error. A review of the charge as a whole establishes that the only time that the trial court specifically addressed the jury's verdict in regard to the felony murder and voluntary manslaughter offenses, the trial court spoke solely in terms of guilt.

> In your verdict form, Count I will contain findings relating to malice murder, felony murder and voluntary manslaughter. If you do not believe beyond a reasonable doubt that the defendant is guilty of malice murder, then *you would be authorized to find him guilty of felony murder or voluntary manslaughter. If you do find him guilty beyond a reasonable doubt of either of those offenses, you should specify the offenses in which you find him guilty.* The form of your verdict would be *we, the jury, find the defendant guilty* of, and you would name the offense.

(Emphasis supplied.)

As the majority opinion accurately reflects, the trial court did instruct the jury about acquittal. But in that instruction, the trial court used only general terms, speaking of "all charges" or Brown's guilt on "some Counts and not guilty of some Counts."[7] The trial court never expressly informed the jury that a verdict of not guilty of malice

---

[7] The charge was:
    If you find that the State has failed to prove the defendant's guilt beyond a reasonable doubt *as to all charges* or if you have any reasonable doubt as to the defendant's guilt *as to all charges*, then it would be your duty to acquit the defendant, and the form of your verdict would be we, the jury, find the defendant

murder operated as a general acquittal of felony murder and voluntary manslaughter; it never even informed the jury in more general terms that a verdict of not guilty of malice murder operated as a general acquittal of all the homicide offenses. Although it told the jury that felony murder and voluntary manslaughter were included offenses or lesser offenses of murder, it never explained to the jury what those terms meant. All the jury knew was that it was authorized to find Brown guilty of felony murder or voluntary manslaughter if the evidence of malice murder was not sufficient and that it could acquit Brown of "all charges" by marking the "not guilty" option on a form that did not contain a "not guilty" option for two of the offenses listed on the form.

"The defendant, having entered a general not-guilty plea, was entitled to a jury empowered to decide that he was not guilty." *Illinois v. Biggerstaff*, supra, 679 NE2d at 121. I would recognize that a jury is entitled to consider a form that sets forth all the available verdicts, "not guilty" as well as "guilty," and that a complete, clear and accurate verdict form is "vital to the . . . integrity of the justice system and [a] defendant's right to a fair trial." Id. Errors in a verdict form cannot be mooted by the verdict rendered on the flawed form. Therefore, because Brown's verdict form and the trial court's charge would have misled a reasonable juror into believing a "not guilty" option was not available on the felony murder and voluntary manslaughter offenses, I must dissent to the affirmance of the judgment entered on Brown's conviction and sentence.

DECIDED MARCH 17, 2008.

*Maryellen Simmons, Mark A. Hinds*, for appellant.

*Peter J. Skandalakis, District Attorney, Raymond C. Mayer, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.

---

not guilty, and you would specify in your verdict *each count* upon which you have found the defendant not guilty.

If you find the defendant *guilty of some Counts and not guilty of some Counts*, you should *specify each Count* upon which you find him guilty and *each Count* upon which you find him not guilty.

(Emphasis supplied.)