**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 8, 2013**

# In the Court of Appeals of Georgia

A13A1583. SPARROW v. THE STATE.                                    DO-060 C

DOYLE, Presiding Judge.

Following a bench trial, Henry Lee Sparrow appeals his conviction of burglary,[1] contending that (1) the evidence was insufficient to support a finding of guilt, (2) the trial court erred by considering his confession, and (3) his trial counsel was ineffective for not moving to exclude the confession prior to trial. Because the record supports the trial court's finding that the confession was voluntary, and the evidence supported the verdict, we affirm.

Construed in favor of the verdict,[2] the record shows that Sparrow, after consuming alcohol, decided to break into an out-of-town neighbor's house. Sparrow,

---

[1] OCGA § 16-7-1 (b).

[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

either alone or with the assistance of an accomplice, broke a back window and entered the house. He stole a computer monitor from a desk and left the house through the front door. When another neighbor noticed the broken window, the neighbor called the homeowner, who instructed him to call the police. The police responded and found the front door unlocked. It was determined that the only item taken was the monitor.

A day or two later, Detective Shane Mann arrived at the residence to investigate the burglary, and upon exiting his vehicle, he saw Sparrow leaving his residence. Sparrow's name had come up during Mann's preliminary investigation, so Mann introduced himself and asked Sparrow where the monitor was. Sparrow replied that he did not take it, but he knew where it was; Mann ultimately recovered the monitor from that location. Mann then asked Sparrow to accompany him to the police station for an interview; Sparrow agreed, and Mann gave him a ride in the front seat of his vehicle. Sparrow was not handcuffed or under arrest.

At the station, Mann conducted a videotaped interview of Sparrow, in which Sparrow ultimately admitted to breaking into his neighbor's house and taking the monitor. Sparrow waived his right to a jury trial, and following a bench trial at which the videotaped confession was played, the trial court found him guilty.

2

1. Sparrow contends that the evidence was insufficient to support a finding of guilt. But in light of Sparrow's pre-confession statement to Mann that he knew the location of the stolen monitor and his confession to stealing the monitor, this enumeration is belied by the record. When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[3]

Based on the record before us, the evidence supports a finding that Sparrow committed a burglary.[4]

---

[3] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[4] See OCGA § 16-7-1 (b) ("A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another . . . .").

3

2. The heart of Sparrow's appeal is his contention that the confession was inadmissible because it was involuntary under former OCGA § 24-5-50, and the trial court erred by considering it.

A statement given by an accused to law enforcement is admissible against him only if the statement was voluntary, and in Georgia, that means that the statement must not have been induced by "hope of benefit," among other things.[5] As we have explained before, a "hope of benefit" arises from promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all. A promise not relating to charges or sentences, including a promise regarding release after questioning, has been held to constitute only a collateral benefit[,] and even if it induces a confession, it does not require the automatic exclusion of that evidence. When a court considers whether a statement was voluntary, it must look to the totality of the circumstances, and at trial, the State bears the burden of proving by a preponderance of the evidence that a statement was, in fact, voluntary. On appeal, when we review the denial of a motion to suppress a statement, we owe no deference to the way in which the trial court resolved questions of law,

---

[5] See former OCGA §§ 24-3-50 ("To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."); 24-3-51 ("The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.").

but we generally accept its findings about questions of fact and credibility unless clearly erroneous.[6]

Here, Sparrow was interviewed without handcuffs in an unlocked interview room, and he was not under arrest. Detective Mann initially asked Sparrow how he had come into possession of the monitor, and Sparrow denied taking it, but stated that he bought it from an acquaintance for $25. Mann, knowing that Sparrow had a history of drug use, then asked Sparrow when the last time was that he "smoked dope." Sparrow denied using any drugs, but after Mann asked again for Sparrow to answer honestly, Sparrow admitted to smoking one "rock" and asked "[W]ill I get in trouble for this?" Mann responded, "[T]his is between you and me . . . I'm not parole." Sparrow said, "I don't even want my sister [with whom Sparrow lived] to know." Mann assured Sparrow that "I ain't gonna tell your sister nothing." Mann asked if that was why Sparrow took the monitor, and Sparrow again denied taking it. Mann then explained that Sparrow's story was inconsistent with the story of other people he had interviewed, including a woman living where the monitor was recovered. Mann then stated: "Like I said, you're not under arrest. As soon as we get done here, bro, I will

---

[6] (Citations and punctuation omitted.) *Edenfield v. State*, __ Ga. __, __ (2) (744 SE2d 738) (2013).

5

put you right back in that car[,] and I will take you right back over to [your house]. Ok? I mean that's just as clear and honest as I can be." At that point, Sparrow stated, "I made a mistake." Mann again asked Sparrow if he took the monitor, and Sparrow repeated, "I made a mistake." Mann explained that he needed a direct answer to the question, "to get all other doubts aside," and Sparrow admitted that he took the monitor.

After speaking with Sparrow further, Mann said that he would still need to check with the burglary victim about what would happen next, and he called Sparrow's parole officer, who asked to speak with Sparrow. Sparrow handed the phone back to Mann, who then, apparently at the request of the parole officer, arrested Sparrow. He explained to Sparrow that "this is for parole . . . I will call the [victim] and . . . see what he wants to do . . . [I]f he doesn't want to do nothing, I don't have charges. I want you to understand that . . . I am not charging you right now. This is for parole. I have to call them. I don't have any choice in the matter." The interview ended with Sparrow in handcuffs awaiting processing for parole.

On appeal, Sparrow argues that the trial court erred by admitting his confession because it was not voluntary. He points to Mann's promises of secrecy and that he would take Sparrow home after the interview if Sparrow was honest with him. But

6

based on our review of the videotape, it is clear that Mann did not promise anything with respect to prosecution for the burglary. Mann had told Sparrow that he still needed to speak with the victim of the crime to determine what would happen next, thus, Mann's promise was merely that he would take him home after questioning and not that Sparrow would be free from future charges. A promise to take the suspect home after questioning – not relating to ultimate charges or sentences for the suspected crime – is merely a collateral benefit that does not require automatic exclusion of the confession.[7] Further, former OCGA § 24-3-51 explicitly states that a promise of secrecy shall not require exclusion of the statement, so Mann's promise not to tell Sparrow's sister or his parole officer about the drug use does not render Sparrow's statement involuntary. Based on the totality of the circumstances, the

---

[7] See *Brown v. State*, 290 Ga. 865, 869 (2) (b) (725 SE2d 320) (2012) (citing *Brown v. State*, 278 Ga. 724, 728 (609 SE2d 312) (2004); *In the Interest of D. T.*, 294 Ga. App. 486, 489 (2) (669 SE2d 471) (2008) (holding that an officer's promise to a juvenile suspect that he would "drive [him] home" once he gave a statement, "even if this could be construed as the promise of a benefit for [the suspect]'s confession, was only a collateral benefit that would not implicate the provisions of [former] OCGA § 24-3-50"); *Smith v. State*, 269 Ga. App. 133, 140 (3) (603 SE2d 445) (2004) (holding that former OCGA § 24-3-50 did not require exclusion where the defendant told an officer that he just wanted to go home, and the officer replied, "let's straighten this out and we'll see about getting you home," because the officer did not offer the hope of lighter or no charges or a shorter sentence in return for the defendant's confession).

record supports the trial court's determination that Sparrow's statements were not subject to exclusion under OCGA § 23-5-50.[8]

3. Sparrow argues that his trial counsel was ineffective for waiting to object to the court's consideration of his confession until his motion for directed verdict. Pretermitting the efficacy of counsel's objection at that point, Sparrow cannot meet his burden under *Strickland v. Washington*[9] in light of our ruling in Division 2.[10]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[8] See *White v. State*, 266 Ga. 134, 134 (2) (465 SE2d 277) (1996) ("The promise of a benefit that will render a confession involuntary under [former] OCGA § 24-3-50 must relate to the charge or sentence facing the suspect.")

[9] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[10] See *Porter v. State*, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013) ("failure to make a meritless objection cannot constitute evidence of ineffective assistance").