304 Ga. 785
FINAL COPY

S18A1439. PHOENIX v. THE STATE.

BETHEL, Justice.

In October 2014, a jury found Wright Greyhound Phoenix guilty of malice murder, aggravated assault, felony murder predicated on aggravated assault, and obstruction of an officer, all in connection with the stabbing death of Angela Whitten.[1] Phoenix's amended motion for new trial was denied, and

---

[1] Whitten was killed on May 29, 2014. On June 11, 2014, a Glynn County Grand Jury indicted Phoenix for malice murder (Count 1), aggravated assault (Counts 2-4), felony murder predicated on aggravated assault (Counts 5-7), robbery by force (Count 8), robbery by sudden snatching (Count 9), hindering an emergency telephone call (Count 10), obstruction of an officer (Count 11), and criminal damage to property in the second degree (Count 12). Before trial, the State nolle prossed the charge of criminal damage to property. After an October 2014 trial, a jury found Phoenix guilty of malice murder, aggravated assault (Count 2 only), felony murder predicated on aggravated assault (Count 5 only), and obstruction of an officer. The trial court directed a verdict of not guilty on the charges of robbery by force, robbery by sudden snatching, and hindering an emergency telephone call. The remaining counts of aggravated assault and felony murder predicated on aggravated assault were dead-docketed. Phoenix was sentenced to life imprisonment without the possibility of parole for murder and twelve months consecutive for obstruction of an officer. The trial court merged the aggravated assault count into the malice murder count for sentencing purposes. Although the trial court purported to "merge" the felony murder count into the malice murder count, the felony murder count was actually vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Phoenix filed a motion for new trial on November 26,

he appeals, contending that the trial court abused its discretion in denying his pre-trial motion for continuance. We are unpersuaded, and, for the reasons stated below, we affirm.

1.     Construed in a light most favorable to the jury's verdict, the evidence adduced at trial showed that, on May 29, 2014, Angela Whitten placed a domestic violence emergency 911 call from her home while being attacked. During the call, she identified her attacker as "Greyhound," Phoenix's middle name. Brunswick Police Department Officer Jillian Shepard responded to the call. After knocking on Whitten's door and receiving no response, Shepard walked along the side of the residence and observed inside through a window a black man wearing a brown shirt and red shorts looking back at her who then began walking toward the home's rear. Shepard followed suit, and when the man opened the back door, Shepard asked what he was doing. The man responded "nothing" before retreating inside the home. Shepard was then notified by a bystander that the man was running, so she called for backup and gave a description of the man to other officers.

---

2014, and amended that motion on June 16, 2017. Following a hearing, the trial court denied the motion (as amended) on December 11, 2017. Phoenix filed a notice of appeal to this Court on January 2, 2018, and this case was docketed in this Court to the August 2018 term and submitted for a decision on the briefs.

Officer Gilberto Colon responded to Shepard's alert. He saw a man running who matched the description given by Shepard, cut the man off with his patrol vehicle, and exited the vehicle. When the suspect attempted to flee, Colon tased, handcuffed, and searched him, finding, among other things, two cell phones (one belonging to Whitten) and yellow gloves stained with what appeared to be blood. The suspect was identified as Phoenix, and Colon, pursuant to department policy, transported Phoenix to the hospital. Upon arriving there, Colon received a call from Shepard directing him to search Phoenix again; Colon patted Phoenix down and found an icepick-type tool covered with bloodstains in Phoenix's right front pocket. Testing later matched the bloodstains on both the tool and gloves to Whitten.

Shepard returned to the residence and, upon entry, found an unresponsive female victim, later identified as Whitten, slumped over the couch. Whitten, bleeding through her shirt from apparent puncture wounds to the chest, was transported by ambulance to the hospital where she later died. A GBI forensic pathologist determined that Whitten suffered 14 stab wounds to her chest area consistent with wounds that would have been caused by the tool recovered from Phoenix's pocket.

Although Phoenix does not challenge the legal sufficiency of the evidence supporting his convictions, adhering to this Court's practice in murder cases, we have reviewed the record and conclude that the evidence recounted above was sufficient to authorize a rational jury to find Phoenix guilty beyond a reasonable doubt on each of the counts of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2.  In his sole enumeration of error, Phoenix argues that the trial court abused its discretion in denying his motion for a continuance. We disagree.

On June 12, 2014, the day after he was indicted, Phoenix filed a constitutional demand for speedy trial. On October 7, 2014, he filed a statutory demand for speedy trial. On October 14, the trial court ordered that jury selection be held on October 20, with the trial to commence on October 27. On October 16, Phoenix moved for a continuance, arguing that defense counsel lacked adequate time to prepare for trial because discovery was not received from the State until October 14 and because the State provided only partial discovery. On October 20, before jury selection commenced, Phoenix argued a "motion to allow adequate time prior to trial to inspect and examine photographs and test all physical evidence in this case," contending that an

expert for the defense had not had an opportunity to inspect the evidence, which would significantly hamper his counsel's ability to adequately voir dire potential jurors. The prosecutor noted the open file policy of the District Attorney's office and argued that the defense had an obligation to exercise due diligence in preparing for trial, especially given the speedy trial motions filed by Phoenix in June and October. The trial court denied Phoenix's motion, finding that the defense had adequate time to inspect the evidence and noting the due diligence requirement incumbent upon any defendant who files a speedy trial motion.

Phoenix then argued for a continuance, again contending that he lacked the time necessary to allow an expert for the defense to test physical evidence. The trial court also denied this motion, explaining that it "has obligations and responsibilities for speedy trials . . . [and] the State has complied with the discovery." Phoenix renewed his motion for continuance on multiple occasions during the trial, and the trial court denied these motions each time.

In considering a motion for continuance, the trial court enjoys broad discretion and may "grant[ ] or refuse[ ] [the motion] as the ends of justice may require." OCGA § 17-8-22. Without a clear showing of abuse of this broad discretion, this Court will not disturb a trial court's decision to deny a motion

for continuance.  Brittian v. State, 299 Ga. 706, 707 (2) (791 SE2d 810) (2016). And "to be entitled to a new trial based upon the denial of a motion for a continuance, a defendant has the burden to show that he was harmed by that denial." (Citation and punctuation omitted.)  Geiger v. State, 295 Ga. 648, 651 (3) (763 SE2d 453) (2014).

First, Phoenix contends that the trial court's denial of his motion for continuance stemmed from a misunderstanding of the law.  Phoenix contends that the trial court "repeatedly proposed" that Phoenix affirmatively withdraw his speedy trial demand and refused to consider Phoenix's motion for continuance absent such action.[2]  The record, however, shows that the trial court considered numerous factors in denying Phoenix's motion, including the State's timely compliance with Phoenix's discovery requests, the District Attorney's open file policy, and the fact that, when Phoenix's case appeared on an earlier trial calendar, his counsel requested a continuance but filed a speedy trial request the very next day.  The trial court also correctly noted the

_____

[2] Our review of the record uncovers no such proposal made by the trial court.

due diligence incumbent upon a party seeking a continuance.[3]  Under these circumstances, we cannot conclude that the trial court abused its discretion.

Alternatively, Phoenix argues that the trial court improperly based its denial of his motion for continuance on the unspecified conduct of his counsel, contending that the trial court should have considered only the conduct of Phoenix himself.  This argument is unavailing because, even if we determined the trial court abused its discretion in denying the motion for continuance, Phoenix has made no showing that this was harmful error.  Although Phoenix argues that the continuance was necessary to allow an expert the time to formulate an effective defense, he has "made no showing as to who the expert would be, what his or her testimony would be expected to show, or how that testimony would benefit him."  (Citation and punctuation omitted.)  Foster v. State, 299 Ga. 691, 693 (2) (791 SE2d 826) (2016); see also Wynn v. State, 322 Ga. App. 66, 69 (3) (744 SE2d 64) (2013) ("To show harm, [a party is] required to specifically identify what other evidence or witnesses he would have put forth in his defense if his counsel had been given more time to prepare; speculation and conjecture are not enough.") (citation and punctuation

---

[3] "In all cases, the party making an application for a continuance must show that he has used due diligence."  OCGA § 17-8-20.

omitted).  Moreover, overwhelming evidence of Phoenix's guilt supported the jury's verdict:  Whitten, Phoenix's victim, identified him by name as her attacker on a recorded 911 call; Officer Shepard saw Phoenix in the residence where Whitten was found minutes later bleeding and unresponsive; Phoenix fled from that same residence; and Whitten's blood was found on the murder weapon and on a pair of gloves, and both were recovered from Phoenix's pocket.

Judgment affirmed.  All the Justices concur.

Decided December 10, 2018.

Murder. Glynn Superior Court. Before Judge Lane.

Amanda J. Walker, for appellant.

Jacquelyn L. Johnson. District Attorney, Andrew J. Ekonomou, Carrie B. Coleman, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.